[Cite as *State v. Whittaker*, 2020-Ohio-867.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-T-0020** |
| KEVIN SCOTT WHITTAKER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2018 CR 00560.

Judgment: Affirmed.

*Dennis Watkins,* Trumbull County Prosecutor, and *Ashleigh Musick*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, Ohio 44481-1092 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, Ohio 44240 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Kevin Whittaker appeals arguing his domestic violence conviction is against the manifest weight of the evidence. We affirm.

{¶2} Whittaker was charged with one count of domestic violence, a third-degree felony in violation of R.C. 2919.25(A) and (D)(1)(4). He pleaded not guilty and was subsequently convicted via jury trial. He was sentenced to 36 months in prison.

{¶3} Whittaker's sole assignment of error contends:

{¶4} "Appellant's conviction is against the manifest weight of the evidence."

{¶5} Whittaker alleges that the jury lost its way and convicted him because of his criminal record and since he is a bad person.

{¶6} While a court of appeals may determine a conviction is sustained by sufficient evidence, it may nevertheless conclude that the judgment is against the weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541 (1997).

{¶7} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.'* (Emphasis added.) Black's, *supra,* at 1594.

{¶8} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. [*Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211]. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')

{¶9} "* * *

{¶10} "* * * to reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *State v. Thompkins*, 78 Ohio St.3d 380, 387-389, 1997-Ohio-52, 678 N.E.2d 541 (1997).

{¶11} R.C. 2919.25(A) prohibits a person from knowingly causing or attempting to cause physical harm to a family or household member. R.C. 2919.25(D)(1)(4) makes the offense a felony of the third degree "[i]f the offender previously has pleaded guilty to or been convicted of two or more offenses of domestic violence or two or more violations or offenses of the type described in division (D)(3) of this section involving a person who was a family or household member at the time of the violations or offenses * * *."

{¶12} The Trumbull County 911 operations manager testified at trial and authenticated the 911 call from the day of the incident that was played at trial. It depicts a woman, who identifies herself as Brandy, calling to report that her live-in boyfriend hit her in the face with the heal of his hand. The operator instructed Brandy to take photos of her injuries and advised her that the police were on their way.

{¶13} Officer Alan Fields, the responding officer, testified that upon his arrival, Brandy told him that Whittaker struck her in the face. Fields recalls seeing red marks on Brandy's face, chin, and neck. He photographed these areas, but the marks did not photograph well. Fields recalls the marks were "much more visible in person." Fields also had Brandy sign a domestic violence affidavit reciting the facts of the incident. She

3

declined emergency medical treatment. Upon running Whittaker's name, Fields learned that he had three prior domestic violence convictions. In response to being asked on cross-examination whether Brandy pushed Whittaker first, Fields recalled Brandy telling him that Whittaker was near her and that she "pushed him back."

{¶14} Officer Don Fridley testified that he went to the apartment the next day to serve an arrest warrant on Whittaker. Brandy let the officers inside, but Whittaker was not there. Fridley and another officer eventually found Whittaker hiding under a table in the building's laundry room.

{¶15} Trumbull County Jail Warden Tracy Wix testified about her responsibility monitoring jailhouse calls. She authenticated three calls made by Whittaker while he was incarcerated and that were played during trial.

{¶16} Whittaker's first call was to a woman named Shannon. During the call, Shannon tells Whittaker that Brandy was "balling" and also said that Whittaker hit her. Whittaker responded stating, "I put my hand over her mouth." Shannon also stated that Brandy was probably mad at him because he had hit her, and that Brandy said Whittaker lies and "uses people." Whittaker also asks Shannon to call Brandy in order to get her to answer Whittaker's calls.

{¶17} Whittaker's second call was to Brandy. Whittaker's tone during this call sounds more hostile than in his call to Shannon. He calls Brandy a "dumb fuck" and tells her to "shut the fuck up." At one point, Brandy states to Whittaker that he "did not know how to keep his hands off her," and Whittaker responded, "whatever, I hope it was worth it." He then says that he was the one going to prison, and Brandy responds "well, you shouldn't have put your hands on me." Brandy also states that she tried to walk away but

4

that he got in her way. Whittaker then threatens that she will "never hear from him again." He also asks, "I thought you told them you didn't want to press charges?" And she responds, "I did."

{¶18} In the final call, also between Whittaker and Brandy, Whittaker instructs Brandy to get his prescriptions filled and bring them during the visiting hour. He tells her not to miss it.

{¶19} Brandy did not testify at trial, but her grand jury testimony was read to the jury. During this testimony Brandy confirms that Whittaker has prior convictions for acts of violence against her ex-husband and her children. Brandy, however, claims these prior charges arose only because her ex and children had jumped on top of Whittaker, who was defending himself. She also testified that Whittaker had spent time in prison for domestic violence convictions stemming from his violence to her. Brandy explained to the grand jury that although Whittaker previously hit her, he did not hit her on the day in question, which is contrary to what she told the police on the date of the incident.

{¶20} The defense presented two witnesses, Whittaker and Jeremy Green, Whittaker's friend since middle school. Green was at the apartment on the day of the altercation when Brandy arrived. He recalls her yelling and Whittaker telling her to shut up. He recalls the two arguing and her continued yelling and then Whittaker "went to put his hand over her mouth" when she smacked his hand away and pushed him. Green talked Whittaker into leaving the apartment to defuse the situation. Green denies that Whittaker struck Brandy that day. On cross-examination, Green admits he has convictions for possession of cocaine, theft, and criminal simulation, an offense of dishonesty.

5

{¶21} Whittaker testified on his own behalf and explained that on the day in question he was breaking up marijuana for his personal use when Brandy arrived and started yelling at him because she hates drugs. The two were yelling at one another and calling each other names. He recalls her getting too loud, and when he got close to her, she shoved him into the wall. Whittaker explained that she is bigger than him and weighs approximately 230 pounds and is approximately 5'8" inches tall. In response, Whittaker said he intended to cover her face, but stated at trial that he did not actually touch her. He denies putting his hands on her that day. Instead, Whittaker said Brandy is bipolar with a bad temper. He also explained that Brandy's chest and neck were red from her high blood pressure, not because he hit her.

{¶22} Whittaker confirmed that he has convictions for passing bad checks, possession of fentanyl, and two domestic violence convictions in Georgia involving Brandy's children. He was also convicted of domestic violence against Brandy in 2016 and attempting to intimidate a victim and violating a protective order.

{¶23} Upon reviewing the record, weighing the evidence including all reasonable inferences, and considering the credibility of witnesses, we do not find the jury clearly lost its way. Although there is conflicting evidence, this is not an exceptional case in which the evidence weighs heavily against the conviction.

{¶24} The state showed that Whittaker had prior domestic violence convictions involving Brandy and others. It also showed that on the date in question, Brandy called 911 reporting that Whittaker hit her in the face. Moreover, Officer Fields recalls Brandy reporting that Whittaker struck her in the face, and Fields saw red marks on her face, chin, and neck. The next day, police found Whittaker hiding in the building's laundry

6

room. And in one of Whittaker's calls from the jail, he admits putting his hand over Brandy's mouth. In a separate call to Brandy, she said that Whittaker does not know how to keep his hands off her and that he should not have touched her. In response, Whittaker says he is the one that is going to prison and threatens that she is never going to hear from him again.

{¶25} Whittaker's statements and conduct during the calls contradict his testimony at trial. And Brandy's grand jury testimony conflicts with her statements in the 911 call as well as her call with Whittaker and her statements to police. Further, as the prosecutor highlights in his closing remarks, it is not unusual for domestic violence victims to change their story upon the passage of time. Thus, we do not disagree with the jury's resolution of the conflicting evidence.

{¶26} Accordingly, the sole assigned error lacks merit, and the trial court's decision is affirmed.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.

7